UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELECT RESEARCH LTD.,

Plaintiff,

-v-

AMAZON.COM, INC. et al.,

Defendants.

24-CV-6419 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

This is the third federal lawsuit that Plaintiff Select Research Ltd. ("SRL") has brought against Defendants Amazon.com, Inc. and Amazon.com Services, LLC (together, "Defendants") in connection with certain patents issued to Amazon Technologies, Inc. ("ATI"). In this case, SRL brings claims for misappropriation of trade secrets and ideas, breach of contract, fraud, unjust enrichment, tortious interference with prospective business relations, and conversion. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss SRL's claims. ECF No. 42. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

The following facts are taken from SRL's Amended Complaint ("Complaint"), ECF No. 38 ("Compl."), and documents of which the Court may take judicial notice, such as docket sheets from other legal proceedings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which a court could take judicial notice."). The allegations in the Complaint are assumed to be true and construed in the light most favorable to SRL. *See, e.g.*, *Kleinman v. Elan Corp.*, PLC, 706 F.3d 145, 152 (2d Cir. 2013).

**A. SRL**

SRL, a company founded by its Chief Executive Officer Richard Barnes, has been "a pioneer in 3-D body scanning since 1996, developing sizing solutions for retail clothing since 1997 and a Body Volume system for healthcare since 2006." Compl. ¶¶ 9-10. SRL is a "forerunner in the area of 3-D body imaging involving use of a Body Volume Index ('BVI')," which the Complaint describes as a "better, more valid indicator of health risk than the Body Mass Index ('BMI')." *Id.* ¶¶ 9, 15. "BVI predicts health risk by measuring part-volumes of a human being, and the associated body composition/weight distribution in a person based on that weight distribution." *Id.* ¶ 16.

SRL is the exclusive owner of several patents related to BVI. *Id.* ¶ 31. On February 12, 2013, the United States Patent and Trademark Office (the "PTO") issued U.S. Patent No. 8,374,671 (the "'671 Patent") to SRL. *Id.* ¶ 13; ECF No. 38-4 ("Ex. D"). The '671 Patent proposes using a body scanner to obtain a three-dimensional model of a person, then using the volume of different parts of the body to calculate the person's BVI, which can be used as a health indicator. *See* Ex. D, at 2:22-24. On June 13, 2023, the PTO issued SRL U.S. Patent No. 11,676,728 (the "'728 Patent"), which "buil[t] upon the use of part-volumes of the body in [three dimensions]" to calculate BVI as proposed in the '671 Patent. *See* ECF No. 38-5 ("Ex. E."), at 2:1-2. The '728 Patent "relate[d] to the use of [two-dimensional] digital images to create and process a [three-dimensional] scan" to calculate the person's BVI. Compl. ¶ 26. On April 18, 2023, the PTO issued U.S. Patent No. 11,631,501 (the "'501 Patent") to SRL. Compl. ¶ 27. The '501 Patent further builds upon the BVI indicator, using "at least two unique photographs" of a person to create "a three-dimensional model," then using the three-dimensional model and person's demographic information to calculate BVI. Compl. ¶ 32; *see* Ex. E, at 2:16-60.

**B. The First Non-Disclosure Agreement**

In January 2015, SRL was contacted by Jonathan Schwartz, Director of Products of Body Labs, Inc. ("Body Labs"), who sought "to gain SRL's knowledge and expertise in determining the calculation method of BVI." Compl. ¶¶ 45-46. Body Labs had been involved in the "three-dimensional body measurement field" since at least 2013, but it had been struggling to calculate body fat percentage. *Id.* ¶ 44. On February 16, 2025, SRL and Body Labs entered into a mutual non-disclosure agreement ("NDA 1"), which, as relevant here, prohibited Body Labs from disclosing or using any of SRL's confidential information, including trade secrets, in its own software. *See id.* ¶¶ 49-51; ECF No. 38-12 ("Ex. L"). On a February 2015 telephone call, Barnes disclosed SRL's trade secrets to Schwartz, including "proprietary [three-dimensional] scan files owned by SRL" that were "sent separately to Schwartz in October 2015." Compl. ¶ 51.

In May 2015, Body Labs added a "Body Slider" feature to its software product called BodyKit, which "allowed a user to manually manipulate a [three-dimensional] displayed image of their body to simulate how their body would appear with a larger or smaller diameter according to the [BMI] scale." *Id.* ¶ 53. Barnes became aware of BodyKit and concluded that its Body Slider feature was "essentially a direct copy of SRL's BVI product." *Id.* ¶¶ 54-55. During a July 24, 2015 phone call between with Schwartz, Barnes asked why Body Labs had developed the feature, to which Schwartz responded: "We thought BVI was such a good idea, we decided to copy it." *Id.* ¶ 56. Barnes informed Schwartz that the feature used SRL's trade secrets in violation of NDA 1 and potentially infringed SRL's patent rights. *Id.* ¶ 57. In August 2015, Schwartz informed Barnes that Body Labs would stop using SRL's patented technology and

trade secrets. *See id.* ¶ 59. Body Labs ceased developing the Body Slider feature later that month. *See id.* ¶ 60.

**C. The Second Non-Disclosure Agreement**

On September 29, 2017, Body Labs was acquired by Amazon.com "for between $70 million and $100 million." Compl. ¶¶ 71-72. On October 25, 2017, Barnes informed Amazon.com via email that Body Labs had previously agreed to "cease [its] development of body volume (body composition) software" and that "representations of body fat and other body composition part volumes from a [three-dimensional] scan are all covered by [SRL's] patent and [] technology." ECF No. 38-13 ("Ex. M"); *see* Compl. ¶ 73. Amazon.com did not respond. *Id.*

In April 2018, SRL exchanged emails with Jessica Watts from Amazon EU S.A.R.L. ("Amazon EU") about opportunities for Amazon "in retail clothing sizing." *Id.* ¶ 81. In May 2018, Barnes, on behalf of SRL, and Watts, on behalf of Amazon EU, entered into a mutual non-disclosure agreement ("NDA 2"). *Id.* ¶¶ 81-82; ECF No. 38-16 ("Ex. P"). Barnes gave a PowerPoint presentation to Watts, which focused on SRL's use of BVI, SRL's expertise in retail clothing fit, and SRL's involvement in a then-confidential national sizing survey that SRL was managing for the British government. Compl. ¶ 84; ECF No. 38-23 ("Ex. W"); *see also* Compl. ¶¶ 77, 91. The "presentation included the [two-dimensional] digital image to [three-dimensional] scan system that SRL had developed for use on a hand-held device such as a smartphone or tablet" and SRL's trade secrets "applicable for healthcare and retail sizing applications." Compl. ¶ 84. Watts assured Barnes that Amazon.com intended to use Body Labs's technology "in some future form in connection" with Amazon.com's "own clothing brands," but it "had no intention of using the Body Labs software for health measurement and risk prediction." *Id.* ¶ 87. With permission from Barnes, Watts emailed a copy of the

PowerPoint slides to employees at Amazon.com in Seattle, Washington. *Id.* ¶¶ 88-89. On July 13, 2020, Amazon.com reported that it would not be acquiring SRL as it was "[n]ot currently pursuing acquisitions in the body measurement space." *Id.* ¶ 177.

**D. SRL's Lawsuits Against Defendants**

On August 27, 2020, Amazon.com released its "Halo" product, which "included a feature called 'Body,' which included a 'Body Slider' identical in function and form" to the Body Slider previously used and then dopped by Body Labs. *Id.* ¶ 178. On October 15, 2020, SRL sued Defendants in the Western District of Texas alleging that Amazon's Halo product infringes SRL's '671 Patent. *Id.* ¶¶ 181-82. After exchanging correspondence and participating in a conference call, SRL dismissed that lawsuit on February 10, 2021. *Id.* ¶¶ 182-87. But Defendants' attorneys terminated settlement discussions in April 2021. *Id.* ¶ 191. In July 2021, SRL filed for a new patent. *See* ECF No. 38-6. After that patent issued, and just under three years after its first lawsuit, SRL filed another lawsuit, this time in the Eastern District of Texas, alleging (initially) (1) infringement of the '671 Patent (again); (2) infringement of the newly issued patent; (3) misappropriation of trade secrets; and (4) breach of contract. *See Select Research, Ltd. v. Amazon.com, Inc.*, No. 4:23-CV-865 (E.D. Tex. Sept. 27, 2023), ECF No. 1. On July 30, 2024, that case was dismissed for lack of jurisdiction. *See id.* ECF No. 56.

Notwithstanding the foregoing, SRL claims that it "first became aware" that various patents obtained by Amazon.com through its subsidiary, Amazon Technologies Inc. ("ATI"), incorporated SRL's trade secrets on September 13, 2023. Compl. ¶¶ 140, 259. The ATI patents are U.S. Patent No. 11,423,630 (the "'630 Patent"), ECF No. 38-25 ("Ex. Y"); U.S. Patent No. 11,232,629 (the "'629 Patent"), ECF No. 38-27 ("Ex. AA"); U.S. Patent No. 11,580,693 (the "'693 Patent"), Compl. ¶¶ 127-29; U.S. Patent No. 11,903,730 (the "'730 Patent"), ECF No. 38-

26 ("Ex. Z"); U.S. Patent No. 11,069,131 (the "'131 Patent"), ECF No. 38-28 ("Ex. AB"); U.S. Patent No. 11,854,146 (the "'146 Patent"), Compl. ¶¶ 143-44; U.S. Patent No. 11,887,252 (the "'252 Patent), *id.* ¶¶ 147-49; U.S. Patent No. 11,861,860 (the "'860 Patent"), *id.* ¶¶ 152-153; U.S. Patent No. 12,004,871 (the "'871 Patent"), *id.* ¶¶ 157-58; U.S. Patent No. 11,461,819 (the "'849 Patent"), *id.* ¶¶ 169-70. SRL contends that these patents "disclose and claim inventions that incorporate the technology of SRL's Patent Portfolio and/or the SRL Trade Secrets," *id.* ¶ 114, and that each patent "contains information which is part of the SRL Trade Secrets," *id.* ¶¶ 108, 118, 123, 128, 133, 138, 143, 148, 153, 158. SRL further alleges that Amazon.com "never disclosed the existence of" any of the underlying patent applications to "induce SRL to dismiss" its earlier patent lawsuit and, "[h]ad SRL been aware of . . . these patent applications, SRL would not have dismissed" that lawsuit. *Id.* ¶ 160.

Based on these allegations, SRL filed this lawsuit on August 26, 2024. As amended, the Complaint brings claims for misappropriation of trade secrets (Count I), misappropriation of ideas (Count II), breach of contract (Counts III and IV), fraud (VI), unjust enrichment (VII), tortious interference (VIII), and conversion (Count IX).[1]

**LEGAL STANDARDS**

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Burch. v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A plaintiff's claims will survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is

---

[1] SRL's Complaint does not contain any Count V. *See* Compl. 46-47.

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a plaintiff must show "more than a sheer possibility that [the defendant] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 547.

## DISCUSSION

Defendants move to dismiss all of SRL's claims for failure to state a claim. The Court will address each of SRL's claims in turn.

### A. Trade Secret Misappropriation (Count I)

The Court begins with SRL's trade secret misappropriation claims brought under both the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and New York law. To state a claim for trade secret misappropriation under either law, "a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019) (internal quotation marks omitted); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("The elements for a misappropriation claim under New York law are fundamentally the same.").

Assuming without deciding that SRL plausibly pleads that it possessed one or more trade secrets, the Court concludes that its trade secret misappropriation claims fail for at least two reasons. First, the Complaint fails to plausibly allege that Defendants misappropriated any trade secret. For starters, SRL neglects to respond to Defendants' arguments on this score and, thus,

has forfeited any arguments to the contrary. *See, e.g.*, *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)). In any event, SRL's allegations of misappropriation are far too conclusory to withstand scrutiny. The Complaint repeatedly asserts, but only vaguely, that each of the identified ATI patents "contains information which is part of the SRL Trade Secrets." Compl. ¶¶ 108, 118, 123, 128, 133, 138, 143, 148, 153, 158. And while some "examples" of such "information" are sprinkled throughout, these examples are similarly obscure. *See id.* ¶¶ 119, 124, 129, 134, 139, 144, 159. For instance, one proffered example is information that "involves how the 3-D models were created from 2-D images, including the algorithms that are used." *Id.* ¶ 159. But such vague allegations say nothing about whether any ATI patents "actually disclosed an SRL trade secret," let alone what that trade secret allegedly was. Defs.' Mem. 26. Put simply, SRL's "conclusory allegations as to how the Defendants misused [its] trade secrets[] are insufficient" to state a claim for trade secret misappropriation. *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 274 (W.D.N.Y. 2018); *see also, e.g.*, *Hyo Jung v. Chorus Music Studio, Inc.*, No. 13-CV-1494 (CM) (RLE), 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014) (dismissing trade secret misappropriation allegations as conclusory where the "Defendants [did] not assert any details regarding in what ways Plaintiffs allegedly misused the [trade secret]").

Second, and in any event, the trade secret misappropriation claims fail because they are untimely. Under both the DTSA and New York law, the statute of limitations is three years. *See* 18 U.S.C. § 1836(d); *CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 970, 971 (2d Dep't 2018). In the case of the DTSA, it runs from "the date on which the misappropriation . . . is discovered or by

the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). Under New York law, it runs from "when the defendant discloses the trade secret or when he first makes use of plaintiff's ideas." *Ferring v. Allergan*, 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013) (internal quotation marks omitted). Here, the Complaint makes plain that SRL learned of the alleged misappropriation as far back as 2015, when it accused Body Labs (Amazon.com's predecessor) of copying its BVI product, *see* Compl. ¶¶ 55-56, and certainly no later than June 2020 and July 2021, when the first two of the relevant patents issued, *see id.* ¶¶ 106-09, 135-39; *see also, e.g.*, *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) ("The existence of a patent application or a public patent puts parties on notice of their existence and therefore starts the clock on the [DTSA] limitations period."). In either case, that is more than three years before SRL filed this lawsuit (on August 24, 2024) and, thus, SRL's trade secrets misappropriation claims are untimely. *See, e.g.*, *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (noting that while the statute of limitations is typically an affirmative defense, a court may grant a motion to dismiss on that basis when the deficiency is clear from the face of the complaint).

Notably, were there any doubt that SRL learned about the alleged misappropriation more than three years before it filed this lawsuit — making its trade secret misappropriation claims untimely — it would be resolved by SRL's *own* prior allegations against Defendants. In its lawsuit against Defendants in the Eastern District of Texas, SRL explicitly alleged that it "discover[ed] Defendants' misappropriation of the SRL Trade Secrets" in "October 2020." ECF No. 43-4, ¶ 178; *accord id.* ¶ 195; *see also* ECF No. 51-2, ¶ 63 ("SRL discover[ed] Defendants' misappropriation of the SRL Trade Secrets [in] October 2020, when SRL was able to access publicly available information about the Amazon Halo that was being sold in the United States.

Analysis of the product revealed . . . that the Amazon Halo was substantially similar to SRL's products and the SRL Trade Secrets."). SRL now claims that, in October 2020, "it only had *suspicions* of misuse." ECF No. 48 ("Pl.'s Opp'n), at 11. But it cannot escape the implications of its own prior admissions so easily. *See, e.g.*, *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22-CV-5974 (JPC) (KHP), 2025 WL 1763262, at *8 (S.D.N.Y. June 25, 2025) ("Courts may . . . take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." (internal quotation marks omitted)).[2]

Accordingly, SRL's trade secret misappropriation claims under both the DTSA and New York law must be and are dismissed.

**B. Idea Misappropriation (Count II)**

Next, SRL brings an idea misappropriation claim under New York law. "To succeed on [a misappropriation of an idea] claim under New York law, a party must prove (1) the existence of a legal relationship between the parties in the form of a fiduciary relationship, an express or implied-in-fact contract, or quasi-contract; and (2) the idea must be novel and concrete." *Turner v. Temptu Inc.*, No. 11-CV-4144 (JMF), 2013 WL 4083234, at *9 (S.D.N.Y. Aug. 13, 2013), *aff'd*, 586 F. App'x 718 (2d Cir. 2014). "The determination of whether an idea is original or novel depends upon several factors, including, *inter alia*, the idea's specificity or generality (is it a generic concept or one of specific application?), its commonality (how many people know of

---

[2] SRL's trade secret misappropriation claim under New York law fails for an additional reason: "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts are generally precluded, unless based on a duty independent of the contract." *My Mavens, LLC v. Grubhub, Inc.*, No. 20-CV-4657 (PGG), 2023 WL 5237519, at *24 (S.D.N.Y. Aug. 14, 2023) (cleaned up). "Misappropriation claims therefore cannot lie where," as here, "they are simply a restatement of a breach of contract claim." *Id.*

this idea?), its uniqueness (how different is this idea from generally known ideas?), and its commercial availability (how widespread is the idea's use in the industry?)." *Wexler v. Hasbro, Inc.*, No. 20-CV-1100 (VEC), 2022 WL 743431, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000)), *aff'd*, No. 22-741, 2023 WL 3513567 (2d Cir. May 18, 2023) (summary order).

SRL's idea misappropriation claim fails for at least two reasons as well. First, it must be dismissed because the Complaint is wholly devoid of allegations that could plausibly satisfy this "'stringent' standard for novelty." *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-CV-8190 (RJS), 2016 WL 1275659, at *6 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.). In contending otherwise, SRL points to various paragraphs in the Complaint that, it argues, "more than show[] genuine novelty and invention." Pl.'s Opp'n 20. But these nebulous allegations are far too generic. For example, one paragraph alleges broadly that, "[t]hroughout years of development and significant investments in research and development, SRL developed extensive trade secrets related to body measurement, clothing size, body volume, and body composition prediction." Compl. ¶ 38. But the Complaint fails to even identify the alleged protectable idea, much less whether that idea is sufficiently specific, uncommon, unique, or commercially unavailable to satisfy the novelty requirement. "Without sufficiently providing specificity as to how [SRL's] ideas are novel or a true invention . . . [SRL] cannot maintain [its] claim of misappropriation of ideas." *Broughel v. Battery Conservancy*, No. 07-CV-7755 (GBD), 2010 WL 1028171, at *4 (S.D.N.Y. Mar. 16, 2010).

Second and in any event, SRL's idea misappropriation claim is, like its trade secret misappropriation claim under New York law, untimely. Under New York law, "courts determine the applicable limitations period by analyzing the substantive remedy that the plaintiff

seeks. Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49-50 (2d Cir. 2019) (cleaned up). Here, "the reality of the cause of action is that it is one for damages, not injunctive relief," so "the three-year statute of limitations applies." *Id.* at 50; *see* Compl. 51 (Prayer for Relief). And as the Court discussed above, the face of the Complaint and documents of which the Court can take judicial notice confirm that SRL discovered the alleged misappropriation of its ideas more than three years before this suit. Thus, its idea misappropriation claim under New York law is time barred.[3]

Accordingly, SRL's idea misappropriation must be and is also dismissed.

**C. Breach of Contract Claims (Counts III and IV)**

The Court next addresses SRL's breach of contract claims, which allege breach of NDA 1 and NDA 2. "Under New York law, there are four elements of a cause of action for breach of contract: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Ide v. Brit. Airways PLC*, 529 F. Supp. 3d 73, 82 (S.D.N.Y. 2021). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956 (RPP), 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014).

SRL's breach of contract claims fail because the Complaint contains only conclusory allegations of breach by Defendants, let alone (in the case of NDA 1) breach during the relevant time period. *See, e.g.*, Pl.'s Opp'n 20 (acknowledging that that the only actionable period for an

---

[3] Like SRL's trade secrets misappropriation claim under state law, its idea misappropriation claim also fails because it is duplicative. *See supra* note 2.

alleged breach of NDA 1 is between August 26, 2018, and February 3, 2020). As discussed above, SRL neither describes the nature of the confidential information that was disclosed in ATI's patents nor specifies how the patents disclosed the information. *See, e.g.*, *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114, at *6 (S.D.N.Y. Sept. 25, 2024) (finding no breach where the "Plaintiff ha[d] not described, even in general terms, the nature of the confidential and proprietary information that [the defendant] allegedly used and/or disclosed, or how that information was used by [the defendant]"). To be sure, the Complaint contains copious citations to figures and excerpts from various ATI patents. *See, e.g.*, Compl. ¶¶ 118, 123, 133, 138, 158. But these citations do little to clarify the vague assertions that Defendants' patents "contain[] information which is part of the SRL Trade Secrets." *E.g.*, Compl. ¶ 118; *see* Pl.'s Opp'n 22.

SRL's claim for breach of NDA 2 (Count IV) fails for an additional reason as well: No Defendant here was party to the contract. "In general, a party who is not a signatory to a contract cannot be held liable for breaches of that contract." *Chemimage Corp. v. Johnson & Johnson*, No. 24-CV-2646 (JMF), 2024 WL 3758814, at *3 (S.D.N.Y. Aug. 12, 2024) (internal quotation marks omitted); *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). Here, the only parties to NDA 2 were SRL and Amazon EU. SRL alleges that "Amazon EU is a subsidiary of and is at least partially, if not wholly, owned by Amazon.com," Compl. ¶ 80, and that "Amazon.com was bound by NDA 2 by virtue of its relationship to Amazon EU," *id.* ¶ 242. But those sparse and conclusory assertions are not sufficient to plausibly state a breach of contract claim against Amazon.com. *See Chemimage Corp.*, 2024 WL 3758814, at *3 (observing that "corporate parents and subsidiaries are 'legally distinct entities'" and that "a contract under the corporate name of one is not treated

as that of both" and discussing exceptions to that rule). And SRL does not even make allegations of that sort — conclusory or otherwise — against Amazon.com Services.

Accordingly, SRL's breach of contract claims must be and are dismissed as well.

**D. Fraud (Count VI)**

SRL also brings a claim for fraud under New York law. The elements of fraud under New York law are "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009)). "Additionally, in conjunction with the facial plausibility standard of Rule 12(b)(6), Plaintiff[] must satisfy the heightened pleading standard set forth in Rule 9(b)," *id.* at 171, which requires Plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)).

SRL's allegations fall well below Rule 9(b)'s heightened pleading standards. SRL alleges that Defendants made false representations to SRL "with the intent to deceive SRL into dismissing" the 2020 patent lawsuit it had filed in the Western District of Texas against Defendants. Compl. ¶ 253. Its principal basis for that claim are two communications by Defendants' counsel to SRL inviting settlement negotiations. *See id.* ¶¶ 182-83; 186-87. But SRL fails to explain "why the[se] statements were fraudulent." *Chorches*, 865 F.3d at 81. In its opposition to Defendants' motion to dismiss, SRL submits new evidence, including several

letters sent by Amazon's attorneys during the Western District of Texas litigation. *See* Pl.'s Opp'n 28-29. But again, the Court cannot consider this new evidence in ruling on Defendants' motion to dismiss. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).

Even if the Court could consider SRL's newly submitted evidence, SRL's fraud claim would fail. SRL submits two letters sent by Amazon's attorneys to SRL's attorneys in connection with SRL's then-pending patent lawsuit, which reflected Amazon's position that its product did not infringe upon SRL's patents. ECF Nos. 43-3, 43-5. Here too, SRL fails to specify why the statements were fraudulent. Additionally, SRL fails to allege facts supporting an inference that its attorneys acted reasonably in dismissing its lawsuit based on these representations from opposing counsel. *See Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 94 (S.D.N.Y. 2022) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015)). Finally, and in any event, SRL fails to plausibly allege that it was damaged by any fraud, as it dismissed the Western District of Texas lawsuit *without prejudice* and has refiled suit against Defendants not once, but twice, since the dismissal.

For all of these reasons, SRL fails to state a fraud claim under New York law.

**E. Unjust Enrichment (Count VII)**

SRL's next claim — for unjust enrichment — is easily dismissed as duplicative. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (2d Cir. 2023). Significantly, however, "[a]n unjust enrichment claim is not available if it simply duplicates, or replaces, a conventional contract or tort claim." *GateGuard,*

*Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *12 (S.D.N.Y. Feb. 16, 2023) (internal quotation marks omitted). That is the case here, as SRL's unjust enrichment claim turns on the same facts that form the basis for its trade secret misappropriation claims. *See* Compl. ¶¶ 261-65. In any event, SRL's unjust enrichment claim also fails as a matter of law for the same reason that SRL's trade secrets misappropriation claim fails. *See, e.g.*, *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 208 (E.D.N.Y. 2024) ("To the extent Plaintiff's other claims succeed, the unjust enrichment claim is duplicative; if Plaintiff's other claims are defective, an unjust enrichment claim cannot remedy the defects." (cleaned up)).

Accordingly, SRL's unjust enrichment claim must be and is dismissed.

**F. Tortious Interference (Count VIII)**

Next, the Court turns to SRL's claim for tortious interference with business relations. To plead that claim under New York law, a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). SRL fails to plead that Defendants interfered with a business relationship. The Complaint alleges only that Body Labs "interfered with SRL's ability to contract within the healthcare and fashion industries," Compl. ¶ 268, but that falls well short of pleading tortious inference under New York law. *See 16 Casa Duse, LLC*, 791 F.3d, at 262 (observing that New York courts reject tortious interference claims containing "only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship"); *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI,*

*L.L.C.*, No. 02–CV–1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (noting that "[a] properly pleaded complaint . . . must allege relationships with specific third parties with which the respondent interfered"). Although SRL contends that its claim is based on Body Labs' tortious interference with SRL's business relations with Amazon, Pl.'s Opp'n 34-35, the Court declines to consider this argument raised for the first time in SRL's opposition, *Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00CIV1983LAPJCF, 2002 WL 31027580, at *4 (S.D.N.Y. Sept. 11, 2002) ("[W]hen opposing a motion to dismiss, a party may not amend his complaint through new allegations made in his briefs."). In any event, this argument is contradicted by the allegations in the Complaint that any business relations between SRL and Defendants began in 2018, *after* Amazon acquired Body Labs. *See* Compl. ¶¶ 72, 77-82.

Accordingly, SRL fails to plead tortious interference under New York law.

**G. Conversion (Count IX)**

Finally, SRL's conversion claim is easily dismissed. Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (internal citation and quotation marks omitted). But the "conversion of intangible property is not actionable under New York State law." *Zirvi*, 433 F.Supp.3d at 466 ("There is no protected interest in an idea, but only in the tangible expression or implementation of that idea. It thus cannot be the subject of conversion." (quoting *Matzan v. Eastman Kodak*, 134 A.D.2d 863 (4th Dep't, 1987))). Violating that principle, SRL's conversion claim relies solely on Defendants' alleged conversion of "SRL's BVI technology patent rights." Compl. ¶¶ 271-75.

Attempting to evade this fatal flaw, SRL yet again raises a new argument in its opposition brief, insisting that its conversion claim is based on the conversion of "scans of SRL's trade secrets," which are "tangible items" that "encapsulate confidential, proprietary information integral to SRL's operations and competitive advantage." Pl.'s Opp'n 37. But even if the Court could consider this new argument — and, again, it cannot, *see, e.g.*, *Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 122-23 — it would fail. It is well established that "pure copying," which is what SRL now alleges, does not support a conversion claim under New York law. *See, e.g.*, *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 496 (S.D.N.Y. 2024) ("Regarding the alleged trade secrets, 'pure copying' is not sufficient to state a claim of conversion."); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414-15 (S.D.N.Y. 2018) (collecting cases).

Accordingly, the Complaint fails to state a claim for conversion.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and the Complaint is DISMISSED in its entirety. Further, the Court declines to *sua sponte* grant SRL leave to amend. To be sure, leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and there are several reasons to exercise that discretion to deny leave here. First, the problems with many of SRL's dismissed claims — namely, its trade secret and idea misappropriation claims, its claim for breach of NDA 2, its fraud claim, its unjust enrichment claim, its tortious interference claim, and its conversion claim — are substantive, so amendment as to these claims would be futile. *See, e.g.*, *Roundtree v. N.Y.C.*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Second, SRL does not request leave

to amend or suggest that it is in possession of facts that would cure the problems with the dismissed claims.  *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014).  Finally, the Court granted SRL leave to amend its original complaint in response to Defendants' first motion to dismiss, which raised the defects in the dismissed claims discussed above, and explicitly warned that SRL would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 31.  SRL's "failure to fix deficiencies in its previous pleadings" — of which there have now been a total of *six* (over the course of its three lawsuits) — "is alone sufficient ground to deny leave to amend *sua sponte*."  *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing cases).

       The Clerk of Court is directed to terminate ECF No. 42, to enter judgment for Defendants consistent with this Opinion and Order, and to close this case.

       SO ORDERED.

Dated: September 2, 2025
      New York, New York

                                              JESSE M. FURMAN
                                          United States District Judge